# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 7475 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Dana Marie Mihalovich vs. Jewel - Osco | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: We grant the motion nof defendant Jewel-Osco for summary judgment pursuant to FRCP 56 [19-1]. All other pending motions are deemed moot by this order. Judgment is hereby entered in favor of Jewel-Osco on all of plaintiff's claims. This case is terminated, and this is a final and appealable order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 26 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | 03 SEP 26 AM 8:__ | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DANA MARIE MIHALOVICH, )
)
Plaintiff, )
)
)
v. ) No. 01 C 7475
)
JEWEL-OSCO, ) Wayne R. Andersen
) District Judge
Defendant. )

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of the Defendant, Jewel-Osco ("Jewel"), for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, we grant the motion for summary judgment.

## BACKGROUND

In February of 1998, Plaintiff was hired by Jewel as a Security Officer for Jewel's Milwaukee District. Her job duties included protecting the Jewel supermarkets against theft and other losses and conducting investigations. As a female Security Officer, she was also assigned to conduct interviews of any female employees in the Milwaukee District who lodged a complaint under the Company's Sexual Harassment Policy. That policy prohibits sexual harassment of employees ("associates") "in any form." It espouses the right of each employee "to work in an environment free from any type of discrimination."

Plaintiff worked the 11:00 p.m. to 7:00 a.m. shift on the night of August 15, 1999. She was assigned to guard the inside of a soon-to-be-opened store at North and Humboldt in Milwaukee. She was the only person posted inside the store overnight. Additional security was

provided for the outside of the store by employees of Merchant's Police, a security agency under contract with Jewel.

On Monday morning, August 16, Plaintiff telephoned Jewel District Loss Prevention Manager Tom Cairns and informed him that during the prior night, two of the Merchant's Police outside guards had been bothering her. One had made repeated unnecessary radio calls; his conduct was annoying but did not contain any sexual content. The other Merchant's Police guard--subsequently identified as Bradley Hait--entered the store and engaged Plaintiff in a lengthy conversation. Plaintiff reported to Cairns that Hait asked her about whether she had a boyfriend and she reported that, while he was talking to her, she observed that he had an erection. She told Cairns that she did not want to work at that store again with those Merchant's Police guards. The evidence shows that Plaintiff did not tell Cairns about any specific lewd remarks allegedly made by Hait, and she did not tell Cairns that Hait had allegedly touched her.[1]

Plaintiff had never seen Hait before she came to the North and Humboldt store on the night of August 15. Hait was supplied by Merchant's Police and was not an employee of Defendant Jewel. The undisputed facts show that Jewel had no advance knowledge of any proclivity on the part of Hait to make unwelcome verbal advances or lewd comments to a female whom he might encounter in a workplace situation.

---

[1] Plaintiff contests this fact, but her contest is based solely on hearsay. She relies on her own unsworn affidavit (Plaintiff's Exhibit 15). Plaintiff's affidavit does not meet the requirements of Fed. R. Civ. P. 56(e). Moreover, Plaintiff's self-serving affidavit, without factual support in the record, will not defeat a motion for summary judgment. See, e.g., *Patterson v. Chicago Assoc. for Retarded Citizens*, 150 F.3d 719 (7th Cir. 1998). Therefore, Plaintiff has failed to proffer competent evidence to create a genuine issue of material fact.

2

As soon as he received Plaintiff's telephone notification of the events of August 15, Tom Cairns called his superior, Area Manager Ralph Jewel, and reported what Plaintiff had told him. Mr. Jewel initiated the process of investigating Plaintiff's sexual harassment allegation. He instructed Mr. Cairns to notify Merchant's Police immediately and to have them bar these guards from returning to that store. Mr. Cairns telephoned Michelle Kochnowicz of Merchant's Police and told her to determine which of her employees had been assigned to that store the night before and to keep them away from that store in the future. Ms. Kochnowicz agreed to do so, and there is no evidence that Hait ever returned to work there. Although Plaintiff presents unsworn letters of former co-workers, who did not provide affidavits and who were not deposed, to the effect that Merchant Police was not notified of this occurrence, all admissible evidence points to the contrary.

On Monday evening, August 16, Jewel Senior Loss Prevention Manager Chris Grabot called Mr. Cairns and informed him that he had just listened to several messages that Plaintiff had left that day on his answering machine. Grabot played the messages over the telephone for Cairns. Cairns heard Plaintiff say that she was quitting and "will never work for Jewel-Osco again," and that she was not going to change her mind.

Jewel proceeded to take steps to investigate Plaintiff's sexual harassment complaint regarding Merchant's Police employee Hait. On Thursday August 19, Jewel District Loss Prevention Manager Rick Hammer and Human Resources Manager Mary Pinski interviewed Plaintiff at the Company's Milwaukee District Office. During the course of that August 19 interview, Plaintiff did not mention any physical touching by Hait. Also, during that interview,

Plaintiff tendered to Mr. Hammer a 7-page handwritten statement. In that statement, Plaintiff wrote:

> For all the positives I have for and about the company, there is, unfortunately, one blaring concern I have had for quite some time. My concern is for my personal safety. The early morning hours of August 16, 1999 brought my fears to a head. It was the final incident to happen and really, the only serious one, but I knew that I couldn't work for Jewel anymore. . . . I complained about these things although not officially, and tried so hard to stay and work through my fears. I really tried but after the incident on 8-16-99 I knew that I just couldn't do this anymore. It's not one isolated incident, it's a lot of petty things and the one huge one that put me over the top.

Defendant acquiesced in Plaintiffs expressed desire to resign, and her employment at Jewel ended.

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the movant has identified the portions of the pleadings, depositions, and affidavits or declarations that demonstrates the absence of a genuine issue of material fact, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (c). A "genuine issue" is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A "genuine issue" exists only "when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F. 3d 530, 534 (7th Cir. 1994).

I. <u>Hostile Environment</u>

A plaintiff may prove a violation of Title VII's gender discrimination prohibition by establishing the existence of a hostile or abusive work environment base on gender. *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986). However, "not every unpleasant workplace is a hostile environment" within the meaning of Title VII. *Perry v. Harris Chernin, Inc.*, 126 F. 3d 1010, 1013 (7th Cir. 1997). In order for sexual harassment to violate Title VII and be actionable, "it must be sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor*, 477 U.S. at 67 (*quoting Henson v. Dundee*, 682 F. 2d 897, 904 (11th Cir. 1982)). Title VII is "not designed to purge the workplace of vulgarity." *Baskerville v. Culligan International Co.*, 50 F. 3d 428, 430 (7th Cir. 1995).

A plaintiff must show that her workplace was both subjectively and objectively hostile. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' of an employee." *Adusumilli v. City of Chicago*, 164 F. 3d 353, 361 (7thCir. 1998) (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" is neither pervasive nor offensive enough to be actionable. *Baskerville*, 50 F.3d at 430. A workplace that is actionable is a workplace that has been allowed by the employer to become "hellish for women." *Id.*

In this case, the undisputed facts show that Hait's inappropriate conversation with Plaintiff was not severe or pervasive enough to have altered the terms and conditions of her employment. Hait's behavior on August 15 was a single, isolated occurrence that was not severe

5

or pervasive enough to lead a reasonable person to conclude that Plaintiff's working environment was hostile. *See, e.g., Hilt-Dyson v. City of Chicago*, 282 F. 3d 456 (7th Cir. 2002) (rubbing the complainant's back was insufficient to establish a hostile environment).

Furthermore, even if one were to view Hait's alleged misconduct to be severe, it still may not be attributable to Jewel. Employers are not automatically or strictly liable for all hostile environment discrimination that may be committed by a complainant's supervisors or co-workers. This is even more the case where the alleged harasser is a person who is not even an employee of the complainant's employer. In fact, the Seventh Circuit has suggested that employers may not be answerable under Title VII for sexual harassment of their employees that is committed by an independent contractor rather than by a co-worker. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803 (7th Cir. 2001).

In *Berry*, the Seventh Circuit questioned the reasoning of decisions from other circuits that have held employers vicariously liable for harassment by independent contractors' employees, noting "they would appear to be in tension with recent Supreme Court precedent, since an employee of an independent contractor typically cannot be considered an agent of the employer" *Id.* at 811-12 (*citing Burlington Industries v. Ellerth*, 524 U.S. 742, 754-60 (1998)).

Even assuming, arguendo, that employers may be held liable for the misconduct of independent contractors, they would be liable only when the plaintiff shows that the employer failed to exercise reasonable care to prevent, and to promptly correct, any sexually harassing behavior. *See Burlington*, 524 U.S. at 764. "The employer's legal duty . . . is discharged if it takes reasonable steps to discover and rectify acts of sexual harassment of its employees." *Baskerville*, 50 F.3d at 432.

6

In this case, the undisputed evidence shows that Jewel had no reason to anticipate Merchant's Police guard Bradley Hait's misconduct toward Plaintiff prior to August 15. Plaintiff had never seen Hait before that night. Jewel had no prior indication that he was a harasser or potential harasser. There was no continuous course of misconduct by Hait leading up to the August 15 incident. The undisputed facts show that this was an isolated act for which there had been no forewarning.

The record also demonstrates that Jewel took immediate steps to respond appropriately to Plaintiff's report. Jewel immediately began an investigation. District Loss Prevention Manager Rick Hammer scheduled a meeting with Plaintiff for Thursday, August 19 to interview her about the incident. Only Plaintiff's decision to resign short circuited that investigation. This is all that Title VII requires.

For these reasons, Plaintiff cannot establish that Jewel is liable under Title VII on her hostile work environment claim.

II. Retaliation

The elements of a prima facie case for unlawful retaliation are that: (1) Plaintiff engaged in protected activity; (2) she suffered an adverse employment action subsequent to her protected activity; and (3) there exists a causal connection between her protected activity and the adverse employment action. *Smart v. Ball State University*, 89 F. 3d 437, 440 (7th Cir. 1996). If there is no proof of an adverse employment action, a plaintiff will have failed to establish the second and third elements of the prima facie case. *Id.* at 440-41.

In this case, Plaintiff submitted her resignation to Jewel, without any prompting by Jewel. Actually, she resigned orally on August 16 and again in writing on August 19. Even if Plaintiff

now denies that she left messages for Tom Cairns on Monday, August 16, stating that she was quitting and would not be coming back to Jewel, that factual dispute will not preclude the granting of summary judgment for Jewel. For it is beyond dispute that Plaintiff submitted a written resignation to Rick Hammer and Mary Pinski on Thursday August 19. She prepared the 7-page handwritten explanation in advance of coming in for the meeting. That written statement explains that her longstanding concerns for her personal safety in the Security Officer position had led her to decide that "I knew that I couldn't work for Jewel anymore." In the face of that resignation in her own hand, Plaintiff cannot now maintain that she was discharged against her will because of her complaint about Merchant's Police employee Hait.

There is no credible evidence that would support a conclusion that Plaintiff's resignation was actually a "constructive discharge." Plaintiff would need to show "that she was forced to resign because working conditions, from the standpoint of the reasonable employee, had become unbearable." *See, e.g., Lindale v. Tokheim Corp.*, 145 F. 3d 953, 955 (7th Cir. 1998). In such cases, the Seventh Circuit sets the bar even higher for plaintiffs. They must prove a discriminatory work environment "even more egregious than the high standard for hostile work environment." *Tutman v. WBBM-TV, Inc.*, 209 F. 3d 1044, 1050 (7th Cir. 2000), *cert. denied*, 531 U.S. 1078 (2001). "An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Ulichny v. Merton Community School Dist.*, 249 F. 3d 686, 704 (7th Cir. 2001).

Plaintiff's voluntarily resignation is thus the legal and factual cause of the termination of her employment relationship with Jewel. Accepting an employee's resignation is not--as a matter of law--an "adverse employment action" that would be an essential element of a prima facie

retaliation case. Furthermore, an employee cannot submit a resignation to her employer and then argue that her employer's acceptance of her resignation is a pretext for unlawful discrimination. In this case, Plaintiff's resignation constitutes Jewel's legitimate, non-retaliatory justification for discharging her from employment.

### III. Alleged Unlawful Acts That Were Not Included In A Timely Discrimination Charge

Plaintiff filed her charge with the EEOC and with the Wisconsin Equal Rights Division on December 3, 1999. That charge was based solely on the August 15 Hait incident and alleged retaliation because of Plaintiff's complaint to Jewel about that incident. Plaintiff's Amended Complaint, however, has added allegations concerning various events unrelated to the Hait incident, including events which allegedly occurred outside the 300-day period prior to the filing of Plaintiff's charge.

The law is clear that the scope of the underlying charge limits the scope of the subsequent court action. *Babrocky v. Jewel Food Co.*, 773 F. 2d 857, 864 (7th Cir. 1985); *Luna v. Walgreen's*, 888 F. Supp. 87, 89 (N.D. Ill. 1995). The incidents [see Amended Complaint ¶9B through ¶9K] which Plaintiff is seeking to graft onto the Hait sexual harassment claim are not in any way related to the Hait incident. This is not a case of a continuous course of interrelated and similar misconduct. Therefore, as a matter of law, Plaintiff cannot recover on the claims set forth in ¶¶9B-9K of the Amended Complaint.

Furthermore, in addition to having been omitted from Plaintiff's administrative agency charge, most of those additional claims are time-barred even if Plaintiff had included them in her December 3, 1999 charge. For example, the alleged harassment by coworker Tommy Baker

9

[Amended Complaint ¶9B] occurred in March or April of 1998. The alleged sabotage of her automobile by coworkers [Amended Complaint ¶9C] occurred in the Spring of 1998. The alleged unwelcome comments by Mr. Grabot and Mr. Cairns [Amended Complaint ¶9E] occurred in November of 1998. Most of the remainder of the additional alleged incidents [Amended Complaint ¶9G-¶9J] do not constitute actionable adverse employment actions.

In any case, as mentioned above, none of the claims that are set out in ¶9 of the Amended Complaint were included in Plaintiff's discrimination charge. Their omission from the charge precludes any recovery for those incidents.

## CONCLUSION

For the foregoing reasons, we grant the motion of the Defendant Jewel-Osco for summary judgment pursuant to Fed.R.Civ.P. 56 (# 19-1). All other pending motions are deemed moot by this Order. Judgment is hereby entered in favor of Jewel-Osco on all of Plaintiff's claims. This case is terminated, and this is a final and appealable order.

Wayne R. Andersen
United States District Judge

Dated: September 23, 2003